UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| STEVE BRACKETT,<br><br>　　　　　Plaintiff,<br><br>　　v.<br><br>COMCAST CABLE COMMUNICATIONS MANAGEMENT, LLC, and DOES 1 through 50, inclusive,<br><br>　　　　　Defendants. | No. 2:22-cv-00948-MCE-CKD<br><br>**MEMORANDUM AND ORDER** |

　　　Through the present action, Plaintiff Steve Brackett ("Plaintiff") seeks damages from his former employer, Defendant Comcast Cable Communications Management, LLC ("Comcast") as a result of his termination in 2020. In addition to wrongful discharge, Plaintiff asserts various associated claims against Comcast, including causes of action for breach of contract, breach of the implied covenant of good faith and fair dealing, intentional infliction of emotional distress, and disability discrimination in contravention of California's Fair Employment and Housing Act. Although Plaintiff's lawsuit was initially filed in Sutter County Superior Court, it was removed here on diversity of citizenship grounds pursuant to 28 U.S.C. §§ 1332 and 1441.

///

Comcast now seeks an order compelling arbitration on grounds that Plaintiff agreed to arbitrate any employment-related disputes with Comcast through his acceptance of Comcast's alternative dispute resolution program, called Comcast Solutions. For the reasons stated below, Comcast's Motion to Compel Arbitration (ECF No. 5) is GRANTED.[1]

## BACKGROUND

### A. Complaint

Plaintiff was hired by Comcast in 1988 as a Field Operation Network Maintenance Communication Technician and remained in that position the time of his termination on or about January 1, 2020. Plaintiff alleges he was terminated "because of, among other things, his physical disabilities and his age." Compl, ECF No. 1-2, Ex. A to the Decl. of Michael D. Weil, ¶ 6.

After submitting an administrative complaint with the California Department of Fair Employment and Housing and receiving a right-to-sue letter on April 20, 2021, Plaintiff filed the instant lawsuit in state court on April 4, 2022. As indicated above, Comcast proceeded to timely remove the case to federal court on November 16, 2016. Citing its agreement with Plaintiff through Comcast Solutions to arbitrate any disputes arising out of the course of his employment, Comcast subsequently filed the present Motion to Compel on July 1, 2022, after Plaintiff refused to submit to arbitration

### B. Arbitration Program

In 2013, Comcast "rolled out" its Comcast Solutions Program for alternative dispute resolution to its existing California employees, which included Plaintiff. Decl. of

---

[1] Because oral argument would not be of material assistance, the Court ordered this matter submitted on the briefs. E.D. Cal. Local Rule 230(g).

Lynn Collins, ECF No. 5-2, ¶ 2. According to Comcast, Comcast Solution Programs is a program specifically designed to quickly facilitate the resolution of employees' legal claims in a manner less expensive to all parties. Comcast Solutions provides for a three-step procedure for resolving disputes between Comcast and its employees. Id. at Ex 1, p. 2; Ex 2, p. 4-7. First, an internal "Comcast Solutions Lead: reviews the claim to determine if it is a covered claim. Id. at Ex 2, p. 4. Covered legal claims include "[m]ost claims that assert a violation of law relating to [] employment." Id. at Ex. 3, pp. 3-4 (providing a detailed but not exhaustive list of covered claims). If the claim is determined to be covered, the Comcast Solutions Lead will work with the employee and Comcast representatives towards a mutually satisfactory resolution. Id. at Ex. 2, pp. 4-5, Ex. 9, p. 6. Should the employee be dissatisfied with the proposed resolution, however, he or she can proceed to the second step of the program, non-binding mediation through an outside, professional dispute resolution organization like the Judicial Arbitration and Mediation Services organization ("JAMS") or the American Arbitration Association ("AAA"). Id. at Ex. 1, p. 6; Ex. 2, p. 6, Ex. 9, p. 8. The employee does not have to pay any fees in connection with mediation and both sides have input into selecting the mediator. Id. at Ex. 3, p. 3.

If mediation is unsuccessful in settling the dispute, the employee may resort to the program's third and final step, a binding, two-day arbitration hearing through JAMS or the AAA before a mutually selected arbitrator. Id., Ex 1, p. 6, Ex. 2, p. 6, Ex. 9, p. 7. Either party may submit a request for a longer hearing to the arbitrator if the party demonstrates that the complexity of the dispute justifies additional time. Id. at Ex. 2, p. 6. The employee is required to pay, at most, a $150 arbitration initiation fee, which is refunded if he or she prevails on any portion of their claim. Id. at Ex. 1, p. 3; Ex. 2, p. 7, Ex 9, pp. 8-9. In addition, at the conclusion of the arbitration, Comcast agrees to reimburse its employee for up to $1,500 in attorney's fees or related costs incurred as a result of the arbitration, regardless of the arbitration outcome as long as the arbitrator does not determine the claims to be frivolous. Id. at Ex. 1, pp. 3-4; Ex. 2, p. 7, Ex. 9, pp.

3

8-9.

Along with its three-tiered approach to dispute resolution, the Comcast Solutions program also includes an explicit waiver for jury trials, which is set apart from other text in boldfaced type, stating as follows:

> **If you agree to participate in the program, both you and the company waive the right to bring a civil action or have a jury trial for any covered legal claims.  You also waive the right to bring or participate in a class action or collective or representative action on covered claims.  All covered claims will be handled through the three-step Comcast Solutions process; both you and the company will be bound by the final decision of the arbitrator.**

Id. at Ex. 1, p. 8 (emphasis in original).

To the extent that there is any question over whether a particular issue is arbitrable, the Program specifies that the arbitrator will decide that issue, with the Program materials therefore providing that "[a]ny issue concerning the arbitrability of a particular issue or claim pursuant to the arbitration agreement . . . shall be resolved by the arbitrator, not the court."  Id. at Ex. 2, p. 8; Ex 9, p. 10.

If an employee did not want to participate in Comcast Solutions, he or she had the ability to "opt out" by submitting a one page Opt Out Request Form by a certain date, approximately five weeks after Comcast first notified him or her of the program.  Id. at ¶ 6.  On or about September 27, 2013, Comcast submitted the Comcast Solutions materials to Plaintiff in hard copy form to his home address.  Id. at ¶ 7, Exs. 5-6.  The cover letter sent to Plaintiff at that time advised him that if he did nothing, he would be automatically enrolled in the program, but also informed him that if he preferred not to participate, all he needed to do was "**to complete an 'Opt Out' form…. and return it no later than November 8, 2013**" to the either the address provided for email or for regular mail.  Id. at Ex. 5 (emphasis in original).

In addition to providing the materials by email and advising Plaintiff initially that the opt-out deadline was November 8, 2013, Comcast also sent an email reminder about the upcoming deadline to complete the opt-out procedure to Plaintiff on October 23,

4

2013.  Id. at ¶ 8, Ex. 7.  Comcast records showed that Plaintiff nonetheless never submitted an opt-out form, so he consequently was enrolled in the Comcast Solutions Program.  Id. at ¶ 12.

Additionally, in late 2015, when Comcast revised certain aspects of its "Comcast Solutions, Plaintiff was advised that if he wished to remain under the terms of the already existing 2013 Program he should advised the Comcast Solutions Team by phone or email no later than December 30, 2015.  Plaintiff did not take that opportunity to opt-out of Comcast's ongoing Program.  Finally, in early 2016, when Comcast issued a revised Employee Handbook for its employees in California, which included content concerning the Program, Plaintiff was required to electronically click an acknowledgment that he had read and understood the Handbook and all related content, including the Comcast Solutions Program Policy, and did so.  Id. at ¶ 15.  Importantly too, Plaintiff provided the same acknowledgment each subsequent year, from 2017 onward.  Id. at ¶ 16.

**STANDARD**

The parties do not dispute that the provisions of the Federal Arbitration Act ("FAA") governs the agreement to arbitrate encompassed within the Comcast Solutions Program.  "The [FAA] was enacted in 1925 in response to widespread judicial hostility to arbitration agreements." AT&T Mobility LLC v. Concepcion, 131 S. Ct. 1740, 1745 (2011).  Under the FAA, arbitration agreements "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract."  9 U.S.C. § 2.  Section 2 of the FAA "reflect[s] . . . a 'liberal federal policy favoring arbitration." Concepcion, 131 S. Ct. at 1745 (quoting Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp., 460 U.S. 1, 24 (1983)).  At the same time, however, § 2 reflects "the 'fundamental principle that arbitration is a matter of contract.'"  Id. (quoting Rent-A-Center, W., Inc. v. Jackson, 130 S. Ct. 2772, 2776 (2010)).  "[Section] 3 requires courts to stay litigation of arbitral claims pending arbitration of those claims, in

accordance with the terms of the agreement; and § 4 requires courts to compel arbitration 'in accordance with the terms of the agreement' upon the motion of either party to the agreement . . . ." Id. at 1748.

Thus, "[b]y its terms, the [FAA] leaves no place for the exercise of discretion by a district court, but instead mandates that district courts shall direct the parties to proceed to arbitration on issues as to which an arbitration agreement has been signed." Dean Witter Reynolds, Inc. v. Byrd, 470 U.S. 213, 218 (1985) (citing 9 U.S.C. §§ 3, 4) (emphasis in original). "The standard for demonstrating arbitrability is not a high one; in fact, a district court has little discretion to deny an arbitration motion, since the [FAA] is phrased in mandatory terms." Republic of Nicaragua v. Standard Fruit Co., 937 F.2d 469, 475 (9th Cir. 1991). "Moreover, the scope of an arbitration clause must be interpreted liberally and 'as a matter of federal law, any doubts concerning the scope of arbitrable disputes should be resolved in favor of arbitration.'" Concat LP v. Unilever, PLC, 350 F. Supp. 2d 796, 804 (N.D. Cal. 2004) (quoting Moses H. Cone, 460 U.S. at 24; Three Valleys Mun. Water Dist. v. E.F. Hutton & Co., 925 F.2d 1136, 1144 (9th Cir. 1991); French v. Merrill Lynch, 784 F.2d 902, 908 (9th Cir. 1986)).

Thus, "[a]n order to arbitrate . . . should not be denied unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute. Doubts should be resolved in favor of coverage." United Steelworkers of Am. v. Warrior & Gulf Navigation Co., 363 U.S. 574, 582-83 (1960).

In determining whether to compel arbitration, the Court may not review the merits of the dispute. Instead, the Court must limit its inquiry to three steps: (1) whether the contract containing the arbitration agreement evidences a transaction involving interstate commerce; (2) whether there exists a valid agreement to arbitrate; and (3) whether the dispute(s) fall within the scope of the agreement to arbitrate. Standard Fruit, 937 F.2d at 476-78.

///

///

# ANALYSIS

Plaintiff does not take issue with Comcast's position that the scope of its Comcast Solutions program, which by its terms encompasses most claims that assert a legal violation pertaining to employment, cover his claims.  Indeed, the Program Guide expressly includes claims relating to or arising from termination, as well as claims for unlawful discrimination on the basis of age and disability like those asserted by Plaintiff here.  Collins Decl., Ex. 9, p. 2.

Significantly, too, Plaintiff does not dispute that he received the Comcast Solution Program materials, including instructions for opting out of the Program, both through regular mail and email on September 27, 2013, and October 23, 2013, respectively as set forth above.  Plaintiff also does not argue he ever took the action required to opt out of the Program as described in the mailings he received, and he concedes that the Program materials specifically provided he would be automatically enrolled in the Program absent his specific opt-out.  Nor does Plaintiff deny that he electronically acknowledged receiving and understanding the provisions of Comcast's Employee Handbook, which included the Comcast Solutions Program, in 2015 and also for every year after 2017.  Instead, the gist of Plaintiff's argument is that because he did not actually <u>sign</u> an agreement to arbitrate he cannot be compelled to submit his termination-related claims to arbitration now.[2]

Plaintiff is incorrect.  First, his assertion that there is no valid agreement to arbitrate under the circumstances of this matter has been squarely rejected by numerous courts assessing the same Comcast Solutions Program at issue here.  In <u>Azaveda v. Comcast Cable Comms. LLC,</u> No. 5:19-cv-01225-EJD, 2019 WL 5102607 (N.D. Cal. Oct. 11, 2019), for example, Comcast provided the same hard-copy and electronic notification about the employee's right to opt out of the Program.  Under the terms of the

---

[2] Plaintiff Brackett's Declaration (ECF No. 8-1) states only that he 1) did not sign an agreement; 2) never used an electronic signature to do so, and never received a signed agreement from Comcast.

Program, the Azaveda court found that having failed to opt-out, the employee "agreed to participate." Id. at *2. Moreover, like the present case, the plaintiff in Azaveda also acknowledged that he had read and understood the Comcast Employee Handbook, which like the present matter included information pertaining to the Program. As here, the plaintiff in Azaveda had not actually signed an agreement to arbitrate, but that was no impediment to the court finding that a valid arbitration agreement was in place since plaintiff "was given meaningful opportunity to opt out of the agreement and certified that he had read the agreement." Id. at *7. Plaintiff's failure to opt out of the Comcast Solutions Program under analogous facts compels the same conclusion here. While the FAA requires a written agreement to arbitrate, it does not require that the writing be signed by the parties. McLaurin v. Russell Sigler, Inc., 155 F. Supp. 3d 1042, 1046 (C.D. Cal. 2016) (acknowledging that the FAA does not require an arbitration agreement to be signed by the parties to be enforceable).[3]  Consequently the Court finds under the facts before it that an enforceable agreement to arbitrate is present.

  Plaintiff's claims that any agreement to arbitrate here should be rejected as unconscionable is no more successful. To establish a defense based on unconscionability in California, Plaintiff bears the burden of proving that the agreement is both procedurally and substantively unconscionable. See Circuit City Stores, Inc. v. Najd, 294 F.3d 1104, 1108 (9th Cir. 2002) ("[A]n agreement is unconscionable only if it procedurally and substantively unconscionable.'). Procedural unconscionability "addresses the circumstances of contract negotiation and formation, focusing on oppression or surprise." Pinnacle Museum Tower Ass'n v. Pinnacle Market Dev., 55 Cal. 4th 223, 246 (2012). Substantive unconscionability, on the other hand, "focuses on the terms of the agreement and whether those terms are so one-sided to shock the

---

[3] While Plaintiff relies on Mitri v. Arnel Mgt. Co., 157 Cal. App. 4th 1164 (2007) to support a contrary conclusion, Mitri is distinguishable. There, in addition to requiring that all employees sign an arbitration agreement, employees were to be provided with such a signed copy, and no such signed agreement was ever admitted into evidence. Although arbitration was denied in the absence of an agreement, the facts of the present matter, which involve an opt-out procedure and affirmative electronic acknowledgments, are clearly inapposite.

1  conscience."  Kinney v. United HealthCare Servs., Inc., 70 Cal. App. 4th 1322, 1330
2  (1999).
3  　　　　Plaintiff's argument for unconscionability boils down to three contentions.  First,
4  Plaintiff contends that Comcast Solutions does not provide for neutral arbitrators.
5  Second, Plaintiff takes issue with the fact that neither party can disclose information
6  pertaining to the existence, contents or result of an arbitration without the prior written
7  consent of the arbitrator.  Third and finally, Plaintiff contends that the Program fails
8  because it lacks provisions for judicial review.
9  　　　　As a preliminary matter, none of these contentions bear upon procedural
10 unconscionability in the formation of the agreement to arbitrate, and as stated above
11 Plaintiff must show both procedural and substantive unfairness to prevail upon an
12 unconscionability defense.  In Garcia v. Comcast Cable Comms. Mgmt. LLC, No. 5:16-
13 cv-02975-EJD, 2017 WL 1210044 at *2 (N.D. Mar. 31, 2017), the Northern District
14 already decided against procedural unconscionability given the same opt-out provisions
15 present here, and that holding is equally applicable here.
16 　　　　Plaintiff's arguments for substantive unconscionability are no more persuasive.
17 The Program explicitly provides for an "independent arbitrator" to be selected by the
18 parties according to the rules of the selected dispute resolution organization, which
19 militates against Plaintiff's claim that arbitrators will not be neutral.  See Collins Decl., ¶
20 13, Ex 1, p. 6, Ex. 9, p. 8.  Additionally, with respect to the mutual confidentiality
21 provisions, the Ninth Circuit has already found that such provisions do not cause an
22 arbitration provision to be substantively unconscionable.   See Poublon v. C.H. Robinson
23 Co., 846  F.3d 1251, 1265-67 (9th Cir. 2017) (holding that provision requiring that the
24 arbitration proceedings remain confidential does not render agreement substantively
25 unconscionable).  Finally, with respect to judicial review, as long as the arbitration
26 agreement provides that the arbitrator issue a written arbitration decision revealing the
27 essential findings and conclusions upon which the award was based, which the Comcast
28 Solutions Program requires (see Collins Decl, ¶ 13, Ex. 9, p. 8),  Plaintiff is indeed

permitted under the Program to seek to enforce or vacate the arbitrator's award, as appropriate, under the FAA. Id., Ex. 9, pp. 8-9.  Plaintiff's unconscionability arguments therefore fail.

As a final matter, in addition to the Garcia and Azaveda decisions compelling arbitration pursuant to the same Comcast Solutions Program at issue here, as Comcast points out numerous other courts throughout the country, both state and federal, have granted motions to compel arbitration under versions of the Comcast Solutions Program comparable to that present here.  See Def.'s Mot., ECF No. 5, 6:23-7:24) (citing a total of 20 such decisions).   In addition to the rationale for granting the motion already set forth above, then, the weight of authority also squarely supports compelling arbitration in this matter.

## CONCLUSION

For all the foregoing reasons, Defendant's Motion to Compel Arbitration (ECF No. 4) is GRANTED.   Because no argument has been made that all of Plaintiff's claims do not come within the scope of his agreement to arbitrate, the Court further GRANTS Comcast's request to dismiss the action now that arbitration has been compelled.  This case is accordingly dismissed, without prejudice.  The matter having now been concluded in its entirety, the Clerk of Court is directed to close the file.

IT IS SO ORDERED.

DATED: October 12, 2022

_____
MORRISON C. ENGLAND, JR
SENIOR UNITED STATES DISTRICT JUDGE